UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BARBARA A. SNIAROWSKI, | CASE NO. 1:14CV2841 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | Magistrate Judge George J. Limbert |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff Barbara A. Sniarowski ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, filed on June 5, 2015, Plaintiff asserts that the administrative law judge ("ALJ") erred in her decision because the ALJ's decision finding Plaintiff not disabled was not supported by substantial evidence. ECF Dkt. #15. Defendant filed a response brief on August 26, 2015. ECF Dkt. #18. Plaintiff did not file a reply. For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss the instant case with prejudice.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff applied for DIB in August 2011. ECF Dkt. #10 ("Tr.") at 177.[2] The Social Security Administration denied Plaintiff's application initially and upon reconsideration. *Id.* at 95-102.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, replacing Michael J. Astrue.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

Plaintiff then requested a hearing before an ALJ, and her hearing was held on May 1, 2013. *Id.* at 39. A second hearing was held on September 18, 2013. ECF Dkt. #11 ("Supp. Tr.") at 3.[3]

On December 20, 2013, the ALJ denied Plaintiff's application for DIB. Tr. at 20. The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 27, 2011, the date of Plaintiff's application. *Id.* at 25. The ALJ determined that Plaintiff suffered from the severe impairments of ventral hernia and osteoarthritis in the left knee. *Id.* Continuing, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 27. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work as defined in 20 C.F.R. § 416.967(a), except that Plaintiff was: able to stand or walk for four hours in an eight-hour workday; precluded from the performance of pushing or pulling with her lower extremities; precluded from climbing ladders, ropes, or scaffolds; limited to occasional climbing of ramps and stairs; limited to occasional kneeling and crawling; able to frequently stoop or bend at the waist and crouch; and capable of unlimited balancing. *Id.* at 28. Additionally, the ALJ determined that Plaintiff must avoid all hazards. *Id.*

Next, the ALJ determined that Plaintiff was unable to perform any past relevant work, had at least a GED, and that transferability of job skills was not material because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. Tr. at 33. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id.* In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since February 27, 2011, the date Plaintiff's application was filed. *Id.* at 34.

A request for review of the ALJ's hearing decision was filed with the Appeals Council on January 6, 2014. Tr. at 19. The request for review was denied. *Id.* at 5. At issue is the decision of the ALJ dated December 20, 2013, which stands as the final decision. *Id.* at 20.

---

[3] A Supplemental Transcript was filed by Defendant. Like the Transcript, all citations to the Supplemental Transcript refer to the page numbers assigned when the Supplemental Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Supplemental Transcript was compiled.

On December 30, 2014, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on June 5, 2015, asserting the following assignments of error:

1. The administrative law judge's final decision finding the Plaintiff not disabled is not supported by substantial evidence.

ECF Dkt. #15 at 6. Defendant filed a response brief on August 26, 2015. ECF Dkt. #18. Plaintiff did not file a reply brief.

## II. SUMMARY OF THE MEDICAL EVIDENCE

### A. Physical Impairments

Plaintiff suffered an injury at work in July 2007 while moving a chair. Tr. at 251. The following day, Plaintiff went to the emergency room because she was unable to stand. *Id.* Plaintiff was placed on leave from work for one week and then put on light duty for two weeks. *Id.* In November 2007, Plaintiff visited an orthopedic center for a follow-up regarding her back pain. *Id.* at 248. During this visit, Plaintiff stated that she had stopped performing her home exercises because they caused her pain to worsen, and denied any weakness in her legs, as well as any focal bowel or bladder deficiencies. *Id.* at 251. Plaintiff also stated that she experienced numbness in her leg on two occasions, although it is not specified which leg. *Id.*

Visits on January 3, 2008 and January 31, 2008 resulted in similar findings, namely, that Plaintiff's pain was primarily in her back, her gait was non-antalgic, strength in Plaintiff's lower extremities was five out of five, and that Plaintiff had a normal range of motion of her lumbar spine. *Id.* at 249. During a doctor's appointment on February 14, 2008, Plaintiff indicated that she was eighty percent improved, was working on her home program, was discharged from therapy, and planned to return to full-time work the following Monday. *Id.* at 248. Plaintiff was encouraged to continue her home program and was cleared to return to work. *Id.* During this same visit, it was noted that Plaintiff was alert, her gait was non-antalgic, and that the strength in her lower extremities was rated a five out of five. *Id.* During a February 27, 2008 doctor's appointment, Plaintiff complained of swelling of her left knee following an allergic reaction to a multivitamin. *Id.* at 248.

Doctors noted that Plaintiff's left knee was mildly swollen, noted a full range of motion, and assessed left knee bursitis. *Id.*

In March 2009, Plaintiff received treatment from Mark Panigutti, M.D., who diagnosed Plaintiff with degenerative joint disease ("DJD") and injected gel shots into Plaintiff's knee. Tr. at 565. On June 6, 2009, Isam Diab, M.D., indicated that Plaintiff suffered from modest synovitis at the first, second, and third proximal interphalangeal joints, mild decreased flexion, mild synovitis and synovial thickening in the hands, modest synovitis with moderate tenderness over the right wrist more than the left, and moderate synovial thickening. *Id.* at 876. Dr. Diab also noted moderate DJD in both of Plaintiff's knees, in the left more than the right, and stated that the clinical and objective findings were also consistent with inflammatory polyarthritis and that rheumatoid arthritis was more likely than inflammatory arthritis. *Id.* On September 23, 2010, Dr. Diab indicated that Plaintiff was "doing okay," except for recurrent pain in her left knee, and stiffness in hands, wrists, elbows, shoulders, ankles, and feet. *Id.* at 870.

Plaintiff was diagnosed with diverticulitis with localized perforation on November 1, 2010, and she underwent a colonoscopy on January 4, 2011. Tr. at 363. The colonoscopy showed multiple large diverticulosis involving the sigmoid and left descending colon. *Id.* Plaintiff stated that she had been pain free since November 2010, and denied any instances of finding blood in her stool, changes in her weight, nausea, vomiting, constipation, or diarrhea. *Id.*

Plaintiff again visited Dr. Panigutti on February 16, 2011. Tr. at 558. During this visit, Dr. Panigutti assessed that Plaintiff suffered from significant DJD in Plaintiff's left knee. *Id.* Dr. Panigutti also indicated that both knees were tender, both knees had mild flexion contracture, and that motor and sensory functions were intact. *Id.* Additionally, Dr. Panigutti stated that Plaintiff had no effusions and no instability, mild varus deformity, and palpable pulse and warm sensate feet. *Id.* An x-ray of Plaintiff's left knee showed bone-on-bone wear of the medial aspect, as well as moderate wear of the medial aspect of the right knee. *Id.*

In March 2011, Plaintiff underwent a sigmoid resection to remove parts of her colon after repeated attacks of diverticulitis. Tr. at 263. Plaintiff reportedly tolerated the procedure "very well" and was taken to the recovery room in satisfactory condition. *Id.* However, Plaintiff was re-

admitted two weeks later after suffering a wound dehiscence. *Id.* at 259. Plaintiff tolerated the resulting procedure "very well" and was again taken to the recovery room in satisfactory condition. *Id.* Plaintiff was again admitted to the hospital on March 21, 2011 after experiencing abdominal pain, nausea, diarrhea, and vomiting. *Id.* at 336. Consequently, Plaintiff was diagnosed with and treated for a clostridium difficile infection. *Id* at. 336-38.

In April 2011, Plaintiff was admitted to the hospital, claiming that her heart was racing and that she was having difficulty breathing. Tr. at 284. Plaintiff was diagnosed with pulmonary emboli. *Id.* at 285. On April 27, 2011, Plaintiff was diagnosed with a non-healing abdominal wound with methicillin resistant staph aureus. *Id.* at 486. On May 31, 2011, Plaintiff indicated that she felt discomfort at one of the wound sites, and was advised to continue her visits to the wound center for treatment. *Id.* at 482.

In November 2011, Khalid Darr, M.D., performed an internal medicine examination at the request of the Ohio Disability Determination Division. Tr. at 523. Dr. Darr indicated that Plaintiff reported pain in different joints, but especially the left knee, and that bending, lifting, and walking caused pain and stiffness in her left knee. *Id.* Further, Dr. Darr stated that Plaintiff claimed that she was in need of left knee replacement, and that she was in need of ventral hernia repair. *Id.* Dr. Darr indicated that apart from discomfort at the site of the ventral hernia and pain in the left knee, the review of Plaintiff's symptoms was unremarkable. *Id.* at 524. There was no history of shortness of breath, coughing, chest pain, abdominal pain, nausea, vomiting, or hematochezia. *Id.* An examination of Plaintiff's hands revealed no abnormalities. *Id.* at 525. Other than Plaintiff's ventral hernia secondary to sigmoid colon resection for diverticulitis and severe osteoarthritis of the left knee, Dr. Darr found no abnormalities regarding Plaintiff's condition. *Id.* at 526. Dr. Darr opined that Plaintiff's hearing, speech, and sight were within normal limits, communication skills were normal, nutritional status and vital signs were normal, and that Plaintiff's upper extremity functions for reaching, handling, and fine and gross movements were intact. *Id.* Finally, Dr. Darr stated that based upon the clinical evaluation, once Plaintiff's ventral hernia was repaired and her left knee was replaced, Plaintiff should have been able to sit, stand, and carry twenty to twenty-five pounds

frequently, and over fifty pounds occasionally, and that Plaintiff's activities of daily living and instrumental activities of daily living were intact. *Id.*

In December 2011, state agency physician Maureen Gallagher, D.O., M.P.H., reviewed Plaintiff's medical records. Tr. at 67-72. Dr. Gallagher opined that Plaintiff suffered from the following severe impairments: dysfunction - major joints; other disorders of gastrointestinal system; other disorders of the skin and subcutaneous tissues. *Id.* at 69. Dr. Gallagher determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the reported pain, but also that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. *Id.* Dr. Gallagher indicated that Plaintiff's statements regarding her symptoms were only partially credible because Plaintiff reported she could only lift five pounds despite recent physical examinations showing normal gait, normal muscle strength, and no use of assistive devices. *Id.* at 69-70. The opinion of Dr. Darr that Plaintiff was capable of medium work was not given full weight because Dr. Darr's opinion stated that Plaintiff's capability to perform medium work was dependent on Plaintiff undergoing surgery to repair her hernia and to replace her left knee, and these operations had not yet occurred. *Id.* at 70. Accordingly, Dr. Gallagher opined that Plaintiff was limited to light work, except that she could only stand or walk for four hours in an eight-hour workday, and sit for six hours in the same period. *Id.* at 70-71. Dr. Gallagher further opined that Plaintiff should avoid all pushing and pulling, including operating foot controls with her left side, and avoid even moderate exposure to hazards. *Id.* at 71. State agency physician Frank Stroebel, M.D., assessed the same limitations as Dr. Gallagher in May 2012. *Id.* at 84-87.

On September 10, 2012, Plaintiff visited Kermit Fox, M.D., and indicated that she was suffering from pain in her lower abdomen that was rated at six on a scale of one to ten. *Id.* at 854-55. Dr. Fox prescribed medication and ordered physical therapy for left knee strengthening, abdominal scar mobilization, and gentle core strengthening. *Id.* at 857. Later in September 2012, Plaintiff reported lower back pain, without numbness or tingling in her legs, and that her back stiffened up without movement, and that movement exacerbated this stiffening. *Id*. at 849. Plaintiff

further reported that her back was tender. *Id.* Plaintiff was prescribed medication and given a handout on stretching. *Id.* at 851.

In November 2012, Plaintiff underwent surgery to repair her recurrent ventral hernia. Tr. at 671. Due to white drainage, foul odor, and mild lower abdominal pain at the incision cite, Plaintiff went to the emergency room on December 29, 2012. *Id.* at 626. Plaintiff denied fevers, rashes, or any other complaints. *Id.* The related report indicates that Plaintiff was otherwise at the baseline state of health. *Id.* On January 2, 2013, Plaintiff was admitted to the hospital for an infection of her surgical wound. *Id.* at 587-88. Plaintiff was treated with antibiotics and released the following day. *Id.* On February 26, 2013, Plaintiff returned for a follow-up, and the physician indicated that Plaintiff was "doing very well" and that Plaintiff's skin was entirely healed. *Id.* at 573.

In June 2013, Plaintiff sought treatment for right knee and lower leg pain and swelling that had began one and a half weeks prior to the visit. Tr. at 913. Plaintiff rated her pain at "twelve" on a scale of one to ten, and denied numbness, tingling, or weakness in the extremity. *Id.* X-rays of Plaintiff's knees showed bone wall mineralization, with moderate to severe tricompartmental degenerative changes in Plaintiff's left knee, and mild to moderate degenerative changes in her right knee. *Id.* at 926.

### B. Psychological Impairments

Plaintiff's psychological impairments are not at issue in this case, and are only discussed briefly for the sake of completeness and because Plaintiff makes brief mention of psychological impairments in her brief on the merits. ECF Dkt. #15 at 5. Plaintiff underwent a psychological consultative examination on May 11, 2012. Tr. at 537. The examiner opined that Plaintiff's affect was constricted and that she was depressed, but stable. *Id.* at 540. Plaintiff was diagnosed with major depression. *Id.*

### III. SUMMARY OF TESTIMONIAL EVIDENCE

#### A. May 1, 2013 Hearing

At the May 1, 2013 hearing, Plaintiff's counsel provided an opening statement and summary of the medical evidence, and argued that Plaintiff's impairments medically equaled Listing 5.06 for

-7-

inflammatory bowel disease. Tr. at 39-57. In response to questions posed by the ALJ, Plaintiff's counsel stated that Plaintiff's medical impairments did not fit perfectly into a Listing, and stated that she was arguing that Plaintiff's condition equaled a Listing. *Id.* at 57. The ALJ then questioned Plaintiff about her work history. *Id.* at 57-60. Plaintiff indicated that she had worked as a cashier, in all positions at a fast food restaurant, as a caretaker, and as a housekeeper over the years 1997-2011. *Id.* The ALJ briefly questioned the vocational expert before concluding the hearing and indicating that the hearing would resume at a later time. *Id.* at 61-61.

### B.     September 18, 2013 Hearing

The ALJ resumed Plaintiff's hearing on September 18, 2013. Supp. Tr. at 5. Plaintiff indicated that she became disabled and was forced to stop working on February 27, 2011 due to diverticulitis and the resulting colon resection surgery. *Id.* at 11. Plaintiff answered some additional questions about her medical history, the substance of which is discussed above in the section of the instant Report and Recommendation discussing Plaintiff's medical impairments. *Id.* at 11-12. Plaintiff testified that she was in pain all the time and could not have knee replacement surgery until age fifty-five, according to her doctor. *Id.* at 13.

Plaintiff further testified that she lays in bed for at least an hour in the morning before she can start moving, and has to be careful and move slowly when exiting the bed. Supp. Tr. at 20. Plaintiff stated that she walks about one-hundred feet, and then has to stop and sit down in chairs in her backyard. *Id.* at 21. According to Plaintiff, she lives with her twenty-five year old daughter, who assists with household chores because Plaintiff is unable to lift over ten pounds. *Id.* Plaintiff testified that she has days during which she must make frequent trips to the restroom about three times per week. *Id.* at 24. Regarding her knee, Plaintiff testified that it is swollen every day and walking causes her pain. *Id.* at 25-26. Finally, Plaintiff testified that there are days that she is unable to perform her household activities, and that these days occur about twice per week. *Id.* at 26-27.

The ALJ then questioned the vocational expert ("VE"). Supp. Tr. at 27. The VE testified that Plaintiff's previous work as a cashier or in personal care provided no skills that could be transferred to a sedentary position. *Id.* at 27-28. The ALJ posed a hypothetical individual who was

-8-

fifty-one years old, had a GED, who had performed some semi-skilled work, and who had no transferrable skills. *Id.* at 30. This hypothetical individual could engage in light exertion, could stand and/or walk for a maximum of four hours on a given day, could not engage in pushing or pulling with the lower extremities, could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, could occasionally kneel and crawl, could frequently stoop or bend at the waist, and whose balancing was unlimited. *Id.* The only mental limitation imposed on the hypothetical individual was that the hypothetical individual was limited to work that had only occasional changes in routine. *Id.* The VE was also given the limitation that the hypothetical individual must avoid all hazards. *Id.* at 31. The VE testified that the hypothetical individual would be unable to perform any of Plaintiff's past work. Supp. Tr. at 30-31. Continuing, the VE stated that the hypothetical individual would be able to perform the jobs of wire worker, electronics worker, and assembly press operator. *Id.* at 32.

The ALJ then asked the VE if removal of the mental limitation would change the VE's opinion. Supp. Tr. at 32. The VE indicated that removal of the mental limitation did not change the opinion. *Id.* The ALJ then posed a third hypothetical individual who was limited to sedentary work, and the VE indicated that this hypothetical individual would fall under the GRID rules at age fifty. *Id.* at 33. Next, the ALJ asked the VE to consider a hypothetical individual with the same characteristics as the second hypothetical individual who would also miss four days per month due to medical issues. *Id.* The VE testified that there would be no jobs for this hypothetical individual. *Id.*

Plaintiff's counsel then indicated that Plaintiff's position was that from February 27, 2011 until March 2013 Plaintiff's impairments caused her to be limited to less than sedentary work, and then in March of 2013, Plaintiff became limited to sedentary work due to her impairments. Supp. Tr. at 35. Finally, Plaintiff added that she had learned that scar tissue can cause pain, although it is unclear if Plaintiff is claiming that any significant amount of her pain can be attributed to scar tissue because she did not elaborate. *Id.* Following these comments, the ALJ concluded the hearing. *Id.* at 37.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. §§ 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d)(1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at step five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists

in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.; Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## VI. ANALYSIS

Plaintiff claims that the ALJ's decision that she was not disabled was not supported by substantial evidence. ECF Dkt. #15 at 6. Plaintiff argues that the ALJ erred by failing to follow many rules and regulations, and, accordingly, the ALJ's decision that Plaintiff was not disabled is not supported by substantial evidence. *Id.* Specifically, Plaintiff asserts that the ALJ erred in the analysis of the evidence regarding Plaintiff's disability at multiple steps of the five-step sequential evaluation. *Id.* Plaintiff presents her arguments as to how the ALJ erred at steps two through five of the sequential evaluation in turn, and the undersigned will do the same.

### A. Step Two

Plaintiff argues that the ALJ erred in failing to consider several of Plaintiff's well-documented impairments as severe for the purposes of evaluation at the second step of the sequential analysis, namely, Plaintiff's diagnoses of diverticulitis, rheumatoid arthritis, and right knee osteoarthritis. ECF Dkt. #15 at 7. Continuing, Plaintiff provides arguments as to why the ALJ erred in making the determination that each of these impairments was not severe. *Id.* at 7-9. Defendant contends that the regulations do not require the ALJ to designate each impairment as severe or non-severe. ECF Dkt. #18 at 10 (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Continuing, Defendant indicates that the severity standard at step two is a threshold inquiry, and as long as the plaintiff is found to have one severe impairment, the ALJ must proceed beyond step two and consider all impairments at the remaining steps of the sequential evaluation process. ECF Dkt. #18 at 10 (citing 20 C.F.R. § 404.1523). Plaintiff did not address this argument in her brief on the merits, and no reply was filed.

-11-

> Defendant is correct. The Sixth Circuit has addressed this issue, holding:
>
> When an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individuals impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p at 5. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error."

*Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Accordingly, the issue becomes whether the ALJ considered Plaintiff's diverticulitis, rheumatoid arthritis, and right knee osteoarthritis at later steps in the sequential evaluation.

The ALJ considered Plaintiff's diverticulitis, as evidenced by the discussion contained in the ALJ's decision. In the decision, the ALJ indicated that Plaintiff was treated for diverticulitis. Tr. at 29. Continuing, the ALJ describes Plaintiff's treatment for diverticulitis, including the sigmoid reduction, a CT scan of Plaintiff's colon, and reports regarding Plaintiff's non-healing abdominal wound with methicillin resistant staph aureus and the treatment plan for the infection. *Id.* The ALJ indicated that Plaintiff was experiencing discomfort at the wound site, and cited the opinions of physicians on when the wound should heal and the date Plaintiff could have returned to work, as well as Plaintiff's limitations in her ability to lift objects. *Id.* Further, the ALJ addressed Plaintiff's diverticulitis in conjunction the repair of Plaintiff's ventral hernia and the dehiscence of the wound, for which Plaintiff required a second surgery. *Id.* at 31. The ALJ did consider Plaintiff's diverticulitis beyond step two of the sequential evaluation. Accordingly, even if the ALJ did err in finding that Plaintiff's diverticulitis was non-severe, that error was harmless.

Plaintiff's rheumatoid arthritis and her right knee osteoarthritis are considered separately and in conjunction by the ALJ. The ALJ indicates that Dr. Diab found Plaintiff to suffer from rheumatoid variant polyarthritis, involving small and large joints, and that Dr. Diab found that Plaintiff's rheumatoid variant polyarthritis was "much improved." Tr. at 31. The ALJ continues, stating the rest of Dr. Diab's opinion, namely, that Plaintiff suffered from DJD, also known as

osteoarthritis, in the left knee more than the right, and that this DJD was active to some degree.[4] *Id.* at 3-4. The ALJ also references Dr. Diab's findings that were consistent with rheumatoid variant polyarthritis effecting Plaintiff's hands, wrists, ankles, and feet. *Id.* at 4. Continuing, the ALJ makes mention of Dr. Diab's finding that Plaintiff had moderate DJD involving both knees, the left more than the right, and that this DJD was active to some degree. *Id.*

Plaintiff admits that the ALJ discusses the diagnosis of rheumatoid arthritis in the ALJ's RCF analysis while arguing that the ALJ should have determined that it was a severe impairment. ECF Dkt. #15 at 9. As demonstrated above, the ALJ does address Plaintiff's right knee osteoarthritis, interchangeably referring to the osteoarthritis as DJD, thus Plaintiff's assertion that the ALJ failed to consider her right knee osteoarthritis is without merit. Even if the ALJ was in error in finding that Plaintiff's rheumatoid arthritis and/or right knee osteoarthritis were non-severe, that error was harmless because the ALJ considered these impairments at steps beyond step two of the sequential analysis. For these reasons, Plaintiff's argument that the ALJ erred at step two of the sequential analysis is without merit.

### B. Step Three

Plaintiff argues that the ALJ failed to provide acceptable analysis of Plaintiff's impairments as they relate to the requirements of Listing Section 5.00, despite substantial evidence of a severe impairment that at least equals the requirements of Listing 5.06, the listing for irritable bowel disease, and that the ALJ's decision is devoid of any discussion of Listing 5.06. ECF Dkt. #15 at 10. Listing 5.06 reads:

> Documentation by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:
>
> > A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period.
> >
> > OR

---

[4] DJD is also known as osteoarthritis. Whenever the ALJ discusses DJD in Plaintiff's right knee, the ALJ is addressing right knee osteoarthritis. *See* http://www.healthline.com/health/osteoarthritis.

> B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:
>
>> 1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
>>
>> 2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
>>
>> 3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
>>
>> 4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
>>
>> 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
>>
>> 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

Plaintiff asserts that she meets the requirements of Listing 5.06A because she has suffered from a chronic digestive disorder, more specifically, severe diverticulitis. ECF Dkt. #15 at 11. Plaintiff fails to state how she meets or equals the requirements of Listing 5.06A. There is no claim that Plaintiff suffered from an obstruction of stenotic areas (not adhesions) in the small intestine or colon, and Plaintiff does not point to any medical evidence of an obstruction. Plaintiff's brief does not indicate that she meets or equals the requirements of Listing 5.06B, and, in any event, Plaintiff does not meet the requirements of Listing 5.06B because Plaintiff is unable to show, and does not attempt to show, where on the record there is evidence of abdominal masses, as required by Listing 5.06B(3), one of the two Listing 5.06B sections Plaintiff believes is satisfied. *See* Tr. at 54. Plaintiff asserts that the ALJ's failure to address Listing 5.06A was erroneous, but provides no law in support of the position that the ALJ commits reversible error by not considering a Listing that the claimant is unable to satisfy. Plaintiff has failed to establish that she met or medically equaled any Listing.

Plaintiff also argues that the ALJ erred in failing to call a medical expert to provide testimony because ALJs are not permitted to make a finding of whether an impairment equals a

-14-

Listing. ECF Dkt. #15 at 12. Continuing, Plaintiff asserts that the ALJ imposed her own lay knowledge for that of a medical expert. *Id.* Defendant argues that the ALJ had opinions from two state agency reviewing physicians, neither of which indicates that Listing 5.06 is applicable. ECF Dkt. #18 at 15. In addition to the opinions of the state agency reviewing physicians, Defendant argues that there were over nine-hundred pages of medical evidence available to the ALJ, and that there was more than enough evidence for the ALJ to determine whether Plaintiff was not disabled at step three of the sequential evaluation. *Id.* at 16.

Defendants arguments are well taken. Plaintiff argues that the ALJ substituted her opinion for the opinion of a medical expert. It does not appear from the record that any medical expert suggested or believed that Listing 5.06 was applicable. The only prior mention of Listing 5.06 that Plaintiff's cites is the argument that Listing 5.06 should apply as presented by Plaintiff's attorney before the ALJ during the hearing. ECF Dkt. #15 at 12. The ALJ could not have been substituting her opinion for the opinion of a medical expert because no medical expert thought that Listing 5.06 was applicable. The ALJ might not have taken Plaintiff's suggestion to consider 5.06, but Plaintiff cites no law or statute dictating that the ALJ must consider every Listing suggested by the claimant. The ALJ had voluminous medical records to review when making her decision, and did not substitute her judgment for the judgment of a medical expert. For these reasons, and the reasons discussed above, Plaintiff's argument that the ALJ failed at step three of the sequential evaluation is without merit.

### C. Step Four

Plaintiff argues that the ALJ did not properly consider Plaintiff's past relevant work when performing the RFC analysis. ECF Dkt. #15 at 13. Plaintiff asserts that the ALJ considered the improper fifteen-year period of 1996-2011 when determining Plaintiff's past relevant work because she relied upon the alleged onset date rather than the date of the adjudication. ECF Dkt. #15 at 13 (citing 20 C.F.R. §§ 404.1560, 404.1565; S.S.R. 82-62). The ALJ made her decision in 2013, so the proper fifteen-year period runs from 1998-2013. S.S.R. 82-62. Plaintiff claims that the ALJ improperly considered the jobs of cashier and fast food worker because these jobs were held before 1998.

Defendant asserts that while S.S.R. 82-62 does say that fifteen years is generally the time period in which the ALJ is to look for past relevant work, the ruling also states:

> While the regulations provide that a claimant/beneficiary's work experience is usually relevant when the work was done within the last 15 years, in some cases worked performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations.

S.S.R. 82-62 further states, "[t]he fifteen-year guide is intended to insure that remote work experience which could not reasonably be expected to be of current relevance is not applied." Here, the work experience outside of the fifteen-year period that was considered by the ALJ is not so remote that it could not reasonably be expected to be of current relevance. Moreover, it appears from Plaintiff's hearing testimony that she worked at the fast food restaurant until 1999. Accordingly, this employment could have been properly considered had the ALJ used the correct fifteen-year period when determining Plaintiff's past relevant work. Tr. at 58. It is unclear from the hearing testimony, and from Plaintiff's brief, when Plaintiff left her job as a cashier and began her job as a fast food worker. In any event, Plaintiff's cashier job was held immediately before the beginning of the fifteen-year period, if not during the period, and is not the type of remote past relevant work experience that is meant to be omitted from consideration by the rules and regulations.

The fifteen-years period is not a hard and fast rule, as made clear by S.S.R. 82-62. Even if the ALJ did violate the proper period, Plaintiff does not argue that the violation would constitute error since the ALJ did not conclude that Plaintiff could perform any of her past relevant work. ECF Dkt. #15 at 14. Plaintiff presents this issue as an example of the ALJ's failure to follow agency rules and regulations. *Id.* S.S.R. 82-62 establishes that, in some cases, work outside of the fifteen-year period can be considered relevant, and that the fifteen-year period is provided to avoid the consideration of remote work experience which could not reasonably be expected to be of current relevance. Plaintiff's work as a cashier was performed, at the very least, up until the year prior to the beginning of the applicable fifteen-year period and is not remote work experience which could not reasonably be expected to be of current relevance. For these reasons, Plaintiff's argument that

the ALJ violated the rules and regulations at step four of the sequential analysis is without merit.

### D.     Step Five

Plaintiff argues that the ALJ's conclusion regarding her RFC was not supported by substantial evidence. ECF Dkt. #15 at 14. First, Plaintiff asserts that the ALJ's assessment failed to consider the impairments that the ALJ found to be non-severe, namely, Plaintiff's diverticulitis, rheumatoid arthritis, and osteoarthritis in the right knee. *Id.* at 14. This same argument has been addressed above, and the undersigned has concluded that the ALJ did consider Plaintiff's diverticulitis, rheumatoid arthritis, and osteoarthritis in the right knee. Accordingly, this argument need not be addressed again here.

Next, Plaintiff asserts that the ALJ was unreasonable in concluding that Plaintiff was capable of standing and/or walking for four hours in an eight-hour workday due to Plaintiff's bilateral arthritis in her knees. ECF Dkt. #15 at 15. Plaintiff also contends that the ALJ was unreasonable in determining that Plaintiff could lift twenty pounds occasionally and ten pounds frequently because Plaintiff suffered from swelling and pain in multiple joints, including the hands, wrist, ankles, and feet. *Id.* Based on these assertions, Plaintiff argues that the ALJ's reliance on the testimony of the VE indicating that jobs that Plaintiff could perform existed in substantial numbers in the national economy was in error. *Id.* Plaintiff contends that the questions posed by the ALJ to the VE asked for jobs that consisted of "light" work, yet "light" work is described in the regulations as work requiring six hours of standing and walking in an eight-hour work day, and requiring pushing and pulling of controls with the hands and/or arms. *Id.* at 16. Since the ALJ imposed restrictions on Plaintiff's RFC that extended beyond those described as "light" work, Plaintiff argues that the ALJ effectively limited Plaintiff to sedentary jobs, and erred when asking the VE to provide "light" jobs with the restrictions imposed in the hypothetical questions. *Id.* Based on this argument, Plaintiff maintains that the jobs posed by the VE could not be performed by Plaintiff. Plaintiff also contends that the *Dictionary of Occupational Titles* ("*DOT*") indicates that the jobs of electronic worker and assembly press operator, two of the jobs the ALJ determined that Plaintiff could perform, would expose Plaintiff to occupational hazards outside of the parameters of the ALJ's determination regarding Plaintiff's RFC. *Id.* Finally, Plaintiff argues that

the ALJ failed to question the VE concerning conflicts between his testimony and the *DOT*, and that the ALJ is thus precluded from reliance on the testimony of the VE. *Id.*

Defendant asserts that Plaintiff misunderstands the ALJ's hypothetical and the regulations. ECF Dkt. #18 at 17. To support this assertion, Defendant argues that rulings issued by the Social Security Administration explain that when an individual's RFC does not coincide with the definitions of any one of the ranges of work defined in the regulations, the ALJ will consider the extent of any erosion to the occupational base, assess its significance, and consult a vocational resource. ECF Dkt. #18 at 17-18 (citing S.S.R. 83-12; 45 Fed. Reg. 55566 (1979)). Defendant contends that the ALJ limited Plaintiff to less than light work, consulted a vocational expert, and then relied upon the testimony of the vocational expert. ECF Dkt. #18 at 18. As far as occupational hazards are concerned, Defendant claims that the *DOT* confirms that none of the jobs involved electric shock, high exposed places, radiation, or explosives, and it is unclear why Plaintiff believes the jobs would expose her to hazards. *Id.* Finally, Defendant acknowledges that the ALJ did not comply with rules and regulations by not questioning the VE regarding discrepancies between his testimony and the *DOT*, but asserts that the error was harmless because there was no discrepancy between the VE's testimony and the *DOT*. *Id.*

Plaintiff's claim that the ALJ's findings were unreasonable because of Plaintiff's bilateral arthritis in her knees and swelling and pain in multiple joints is a challenge to the ALJ's RFC finding. *See* 20 C.F.R. 404.1520(a)(4)(iv). At the fourth step of the sequential analysis, the Plaintiff bears the burden to provide evidence to support her assertions. *Moon*, 923 F.2d at 1181. Plaintiff fails to provide any argument as to why it is unreasonable to conclude that an individual with bilateral arthritis in her knees could stand and/or walk for four hour in an eight-hour workday, or why swelling and pain in multiple joints would "clearly impose restrictions" on Plaintiff's ability to lift twenty pounds occasionally and ten pounds frequently. *See* ECF Dkt. #15 at 15. Likewise, Plaintiff does not argue as to how the pain caused by Plaintiff's impairments would impose limitations beyond those described by the ALJ. Plaintiff merely makes conclusory assertions that the ALJ's findings were unreasonable and not supported by substantial evidence, and has not met her burden of providing evidence to support her assertions.

The ALJ did not err when asking the VE to provide jobs that were "light" and then imposing additional restrictions based on Plaintiff's impairments. This conclusion is supported by S.S.R. 82-13, which states:

> Where an individual exertional RFC does not coincide with the definitions of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In cases of considerably greater restriction(s), the occupational base will obviously be affected, In still other instances, the restrictions of the occupational base will be less obvious.

The ALJ came to the determination that Plaintiff could perform "light" work, with restrictions. Accordingly, the ALJ imposed those restrictions when presenting the hypothetical questions to the VE. The imposition of these restrictions did not limit Plaintiff to sedentary work, and thus Plaintiff's argument that the ALJ erred when considering the jobs provided by the VE because the jobs were not sedentary in nature is without merit.

Plaintiff makes no attempt to explain why she believes that the jobs of electrical worker and assembly press operator would expose her to hazards, or to explain what hazards she would be exposed to if she were to perform either job. ECF Dkt. #15 at 16. Based on a review of the *DOT*, it does not appear that Plaintiff would be exposed to any occupational hazards if she were to obtain a job as an electronics worker or an assembly press operator. *See DOT,* 690.685-014, 726.687-010.

Finally, Defendant argues that although the ALJ failed to comply with S.S.R. 00-4p, this error was harmless. The descriptions provided by the VE of the jobs that Plaintiff could perform did not conflict with the information presented in the *DOT*. Supp. Tr. at 30-34. Again, Plaintiff has provided no argument as to how she believes that the testimony provided by the VE conflicted with the *DOT*. It is only when there is an apparent unresolved conflict between the VE and the *DOT* that the ALJ must illicit a reasonable explanation of the conflict before relying on the VE's testimony. *See* S.S.R. 00-4p; *Mathious v. Barnhart,* 490 F. Supp.2d 833, 851 (E.D. Mich. April 23, 2007); *Young v. Comm. Soc. Sec.*, 351 F. Supp.2d 644, 652 (E.D. Mich. Dec. 22, 2004). "If the ALJ would have perceived a conflict between the vocational expert's opinion and the job requirements for

-19-

reasoning and reading listed in the *DOT*, then the ALJ was obligated to elicit information to resolve the conflict." *Young,* 351 F. Supp2d at 652. In the instant case, no conflict existed between the *DOT* and the testimony provided by the VE, and thus the ALJ was not required to question the VE about any conflicts. Even if the ALJ violated S.S.R. 00-4p, any violation was harmless because there is no conflict between the VE's testimony and the *DOT*. Plaintiff's argument that the ALJ erred in relying on the testimony of the VE is without merit.

## VII. RECOMMENDATION AND CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint in its entirety with prejudice.


DATE: January 25, 2016                */s/George J. Limbert*
                                       GEORGE J. LIMBERT
                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).